# EXHIBIT 1

<u>Contract For Sale Of China Imported Goods</u>
&
<u>Buying Agent/Client Letter Of Agreement</u>

This agreement ("Agreement") dated and effective November O1, 2016, is between (i) PHI TRADING COMPANY, INC. USA, PHI HOLDING COMPANY, LLC, PHI ENTERPRISES, LTD. (collectively, the "Phi Parties") and (ii) FEDERAL REALTY INVESTMENT TRUST, in connection with the Pike & Rose Block 7 Condos Project located in Rockville, MD (the "Project").

### Section One
### Company Definitions and Obligations

<u>Phi Trading Company, Inc. USA</u>:  a North Carolina, United States of America corporation that will be the SELLER.

<u>Phi Holding Company, LLC</u>:  a South Carolina, United States of America, corporation that will be the import bond holder and IMPORTER OF RECORD.

<u>Phi Enterprises, Ltd.</u>: a Hong Kong based Limited Company with offices in Hong Kong and China that will be the SOURCING AGENT.

<u>FEDERAL REALTY INVESTMENT TRUST, a Maryland real estate investment trust</u>a , and will be the BUYER.

### Section Two
### Purchase of Goods

1.      SOURCING AGENT shall identify, procure and/or purchase such Chinese manufactured goods and merchandise ("Goods") from approved manufacturers or vendors pursuant to this Agreement ("Vendors"), as may be requested by BUYER from time to time in connection with the Project, all as required by this Agreement.  BUYER and SELLER shall mutually agree in writing the Goods to be purchased ("Purchase Order"), and the Goods shall be delivered to BUYER in such quantities and at such times as set forth in a Purchase Order and pursuant to any specifications set forth therein.  All such Goods shall comply with the requirements set forth in the BUYER'S Project Manual , Volumes 1 and 2 for Pike & Rose Block 7, Mixed Use ("Specifications") as modified by ASI 080 prepared by WDG Architects, PLLC ("WDG") dated October 31, 2016 and are based on Condo quantities and details drawn in WDG's plans through "ASI 022 dated 9.26.16, delta 7" regarding sheets A10.10 through A10.20, and "ASI 042.2 dated 10.7.16, delta 8" regarding sheets A10.21 through A10.26.

2.      No terms contained in a Purchase Order other than the business terms relating to the Goods identified to be purchased, including the specifications for such Goods, the prices for such Goods and the delivery schedule shall have any effect, as this Agreement shall control as to all terms and conditions between the parties other than those business terms.  In addition, additional or different terms in any acknowledgement issued by the Phi Parties (pre-printed or otherwise) are hereby deemed to be material alterations and notice of objection to and rejection of them is hereby given.

3.      SOURCING AGENT shall identify potential Vendors and prices of the Goods in each Purchase Order. SOURCING AGENT shall not contract with any Vendor for the Goods under a Purchase Order until BUYER has given written approval of such Vendor has been received by SELLER from BUYER.

4.      SOURCING AGENT shall cause the approved Vendor to produce the following for the purposes of assisting the BUYER and SOURCING AGENT to confirm that the aesthetic and other qualities of the Goods are consistent with the specifications in the Purchase Order or any subsequent written specifications provided by BUYER prior to the manufacture and shipment of the Goods:

(a)     a minimum of two samples of each type of Goods, one for BUYER (BUYER is responsible for the expense of BUYER's sample) and one, at SOURCING AGENT'S expense, for SOURCING AGENT (the "Standard Sample"); and

(b)     laminate flooring, kitchen cabinets, pantry cabinets, kitchen countertops, kitchen fixtures, kitchen wall tile, kitchen toe kick finishes, bathroom floor tile, bathroom wall tile, bathroom vanities, bathroom countertops, linen closets, and all bathroom plumbing fixtures, light fixtures, lighted mirrors, (the "Mock-Ups").

The Mock-Ups shall be shipped to BUYER at the Project (pursuant to the terms of Section Four) for BUYER'S review and approval. Before the Goods are manufactured, SOURCING AGENT shall obtain BUYER'S written approval of the Standard Sample or Mock-Up received by BUYER, as applicable. Such approval shall not relieve the Phi Parties from their obligations hereunder to provide BUYER with Goods that conform with the requirements of the Purchase Order and any subsequent written specifications, including written adjustments or instructions after review of the Mock-Ups and Standard Sample, provided by BUYER.

5.      All composite wood and agrifiber products used or consumed in manufacturing and shipping the Goods, including the Standard Sample and Mock-Ups shall comply with the formaldehyde emission standards set forth by all federal, state, and local laws and regulations applicable in the state where the Project is located and shall conform to the BUYER'S plans and specifications for the Project. All products, adhesives, sealants, paints, and coatings used or consumed in manufacturing and shipping the Goods, including the Standard Sample and Mock-Ups, shall adhere to the VOC requirements in the Specifications . The BUYER shall supply to SOURCING AGENT the final, approved Specifications related to the Goods, and Sourcing Agent shall acknowledge that such Specifications apply to the Goods purchased pursuant to this Agreement prior to ordering any such Goods. These requirements are intended for, but not limited to the following products: light fixtures, cabinets/cabinetry, countertops, and tile flooring. All shipping, wrapping and storage containers used in shipping the Goods must adhere to these requirements as well. The provisions of this Paragraph 6 shall not relieve Phi Parties of any responsibility for defective or hazardous product material.

### Section Three
### Sourcing Agent's Additional Responsibilities

SOURCING AGENT'S responsibilities include the following:

1.      To maintain an office location at a place in the United States reasonably approved by BUYER, for the receipt of orders, designs, claims, delivery instructions and messages either by email, fax, letter, or telephone and for the purpose of mutually agreeing upon each Purchase Order.

2.      To provide BUYER with a representative or employee of SOURCING AGENT to travel with the BUYER, or representatives of the BUYER, upon reasonable notice, to visit China for the purpose of exploring options for vendors, factories, goods or merchandise inspections, or any other meetings that may necessary to assist BUYER in the selection or inspection of goods or otherwise for the promotion of business between the BUYER and the Phi Parties pursuant to this Agreement.  For all such travel, the SOURCING AGENT is responsible for all travel expenses of its representative(s), and the BUYER is responsible for all travel expenses of BUYER'S representative(s).

3.      To receive all product designs and orders, including Purchase Orders, from the BUYER and maintain such designs and orders as confidential information and proprietary property of the BUYER, and to protect all such product designs and orders from being manufactured for any competitors of the BUYER, or being disclosed to third parties without the consent of BUYER, which such consent may be denied by BUYER for any or no reason.

4.      To negotiate pricing and minimum order quantities in the best interest of the BUYER, and to continuously explore options for better pricing and alternate Vendors who may offer better quality, design or pricing. Notwithstanding the foregoing, SOURCING AGENT and the other Phi Parties do not have authority on behalf of BUYER to commit BUYER to any contractual arrangements.

5.      To coordinate production and delivery of multiple Vendors' deliveries into consolidated containers in order to promote the least possible duties and charges that would increase the costs of the Goods.

6.      To coordinate production of Standard Samples and Mock-Ups for the purposes set forth herein and for quality inspections and packaging, and for the purpose of assisting in the inspection of the final shipment prior to shipping the goods or merchandise from the Vendor.

7.      To work with Vendors to insure timely and correct delivery of all of the Goods that is adequate for the BUYER, and to inform the BUYER immediately if the Vendor is not able to deliver at the designated time requested by the BUYER.  SOURCING AGENT agrees to provide regular updates upon request advising of the status of each Purchase Order.  Such schedule shall include, but not be limited to: Identification of the Goods; Vendor information; Detailed Pricing Information; Purchase Order Deliver Dates; Anticipated Delivery Dates; Standard Samples Deliver Dates; Deliver Dates for Mock-Ups.  Nothing in this Paragraph 7 relieves the Phi Parties of responsibility for delay in timely delivering the Goods to the Project site in accordance with the delivery date terms set forth in the respective Purchase Order, except as to delay caused by events or circumstances beyond their reasonable control.

8.      To inspect all Goods manufactured or made for the BUYER prior to shipping the goods or merchandise from the Vendor, and to inform the BUYER of any discrepancies or

3

differences from the Standard Sample or Mock-Up, as applicable, and to not allow any shipments to leave the premises of the Vendor with any such discrepancies or differences, without the written approval or consent of the BUYER. The Phi Parties shall ensure the quality of the Goods, and compliance of the Goods with the terms of this Agreement, the Project specifications and requirements of the BUYER, at all times.

9.      To make all necessary shipping arrangements and export services for the Goods and to provide and insure the preparation of the proper and necessary documents for export of the Goods from China and import into the United States through the IMPORTER OF RECORD, including but not limited to On Board Bill of Lading, packing lists, fumigation certificates, manifests, entry documents, post any required surety bonds, invoices and other government forms as may be required under applicable law or otherwise.

10.     To receive and maintain any claims or warrants placed by BUYER for problem or defective Goods or Goods that do not conform to the requirements of this Agreement or the relevant Purchase Order caused either by manufacture, assembly, finishing, packing, transporting or consolidating of the Goods, and to work with the Vendors, as the representative of the BUYER, to insure timely reimbursements, replacements or additional pieces as needed by the BUYER to correct such defective and non-conforming Goods.

**Section Four**
**Shipment Of Goods**

1.      The IMPORTER OF RECORD shall be responsible to land all Goods into the United States and pay all transport costs, including but not limited to all terminal handling charges (THC), charges for terminal service at all ports (CIS), all United States duties, shipping charges, brokerage fees, surety bonds, consolidation fees, etc. In addition, the IMPORTER OF RECORD, shall arrange for trucking of landed Goods from port of entry to the location provided by the BUYER, and notify BUYER or BUYER's REPRESENTATIVE at least 10 days in advance in writing, of when to expect delivery. The IMPORTER OF RECORD shall procure and pay for marine and transportation insurance sufficient to cover 100% loss of any Goods in transport and Marine Transit Insurance "All Risks" insurance from original warehouse to final warehouse at 100% of invoice value to include War Risks and Strikes, Riots and Civil Commotions. This insurance shall name BUYER as additional named insured and loss payee and a certificate indicating such insurance has been procured shall be provided to BUYER prior to the Goods leaving the premises of the Vendor.

2.      There shall be no deductibles on any insurance policies covering the Goods, and all insurance for the Goods shall be subject to the prior approval of the BUYER.

3.      Original invoices or packing lists shall be submitted to BUYER with each shipment and shall include:  Purchase Order number, description of Goods, quantities, pricing information (e.g., unit price, extended totals), and any applicable taxes or other charges.

4.      The costs of all insurance required by this Agreement shall be included in the shipping, landing and additional transportations costs to the final destination, as indicated by BUYER in the Purchase Order.

4

## Section Five
### Payment Of Goods

The BUYER shall pay the SELLER for the purchase price of all Goods as reflected in a Purchase Order. The purchase price shall include the following:

    (a)    The actual cost of the materials, including cost of packaging;

    (b)    The entire shipping costs including all landing and additional transportation costs, including marine and transportation insurance, including import duties and any other US taxes, including applicable state and local sales tax, to final destination; and

    (c)    The SELLER's commission.

The purchase price indicated in the Purchase Order shall cover all expenses borne by the SOURCING AGENT, the IMPORTER OF RECORD, and the SELLER, and all profit and overhead for all of them.

The SELLER shall invoice the BUYER upon and for each shipment, and the BUYER shall pay the SELLER within 30 days of receipt of the invoice as follows:

50% of the Purchase Order purchase price subtotal (less all applicable sales tax included in the purchase price) at the time of placing the order after the Standard Sample or Mock-Up, as applicable has been approved by BUYER; and

Remaining 50% of the Purchase Order purchase price subtotal plus all applicable sales tax included in the purchase price within 30 days of receipt of the Goods by the Buyer.

## Section Six
### Miscellaneous Provisions

1.    Acceptance. Buyer may inspect and test all Goods at reasonable times before, during, and after manufacture. All Goods shall be received subject to Buyer's inspection, testing, approval, and acceptance at the Project as provided herein. BUYER will have the right to inspect the Goods upon receipt, and shall have forty-five (45) days in which to inspect the Goods and give notice to SELLER of any claim for damages on account of condition, failure to conform to the requirements of this Agreement or the Purchase Order, quality, or grade of the Goods, and BUYER must specify the basis of the claim in detail. Failure of BUYER to comply with these conditions will constitute irrevocable acceptance of the Goods by BUYER. Goods rejected by Buyer as not conforming to the Purchase Order, subsequent written specifications provided by BUYER, Standard Sample, Mock-Up, or other requirements of in this Agreement, may be returned to SELLER at SELLER'S risk and expense and, at Buyer's request, shall immediately be repaired or replaced with conforming replacements Goods delivered to the Project site.

2.    Risk Of Loss. The risk of loss from any casualty to the Goods, regardless of the cause, will be the responsibility of the SELLER until the Goods have been unloaded from the

containers by the BUYER or BUYER'S contractor for the Project or other BUYER's representative at the Project site.

3.     Warranty. SELLER warrants to BUYER:

(a)     that the Goods are new and free from defects in workmanship and materials, and conform to the Standard Samples or Mock-ups (as applicable), this Agreement, and all specifications in the Purchase Order or other subsequent specifications furnished by BUYER in writing.

(b)     The Goods and all of their component parts and materials will not infringe upon any third party's intellectual property rights;

(c)     SELLER has the necessary right, title, and interest to provide the Goods to BUYER, and the Goods will be free of liens and encumbrances;

(d)     All of the Phi Parties have all of the necessary licenses, permits, registrations, and designations needed to perform all of their respective obligations under this Agreement.

In addition to the BUYER'S right of rejection as set forth in Paragraph 1 of this Section Six, if SELLER breaches any of the foregoing warranties, or Goods are otherwise defective or non-conforming, SELLER shall during the forty-five (45) day period set forth in Paragraph 1 of this Section Six, at BUYER'S option, promptly repair, replace, or refund the amount paid for such Good. The SELLER'S liability under its Paragraph 3a) of this Section Six warranty is limited to replacement of the Goods with conforming replacement Goods, or refund of the purchase price at set forth herein. No other warranty, express or implied, is made by the SELLER, and none shall be imputed or presumed. SELLER shall bear the cost of shipping and risk of loss of all defective or non-conforming Goods while in transit as well as the cost of shipping and risk of loss of all replacement conforming Goods.

4.     Taxes. All sales taxes, tariffs, and other governmental charges shall be paid by the BUYER and are exclusively the BUYER'S responsibility except as limited by the law and will be included in the purchase price included in the Purchase Order. SELLER shall be responsible for remitting all such taxes, tariffs and other governmental charges to the respective governmental authority responsible for collecting the tax, tariff or charge.

5.     Governing Law. This Agreement and contract shall be governed by the laws of the state of Maryland. Any disputes hereunder between any of the parties will be heard in the appropriate federal and state courts located in Maryland, and each party agrees to personal jurisdiction and venue in that location.

6.     Time is of the Essence; Force Majeure. The parties agree that time is of the essence in the performance of this Agreement. Notwithstanding the foregoing, the parties to this Agreement shall not be responsible for their failure to perform on account of force majeure events or other circumstances beyond their reasonable control, including but not limited to, strikes, acts of God, political unrests, terrorism, embargo, or casualty.

6

7.    Compliance with Law.  SELLER shall comply with all national, international, state, and local laws and regulations governing the manufacture, transportation, and/or sale of Goods and/or the performance of services in the course of this Agreement.

8.    Assignment.  Neither party may assign or factor any rights in, nor delegate, any obligations under this Agreement or any portion thereof without the written consent of the other which consent may be denied, conditioned or delayed for any or no reason.

9.    Enforcement of Obligations.  Notwithstanding anything herein to the contrary, each of the Phi Parties are responsible to the BUYER, jointly and severally, for all obligations set forth herein, and the separation of the functions of the various Phi Parties shall not serve to limit BUYER'S right to full and complete performance of all obligations owed to it under this Agreement.

10.   Indemnification.

(a)    The Phi Parties shall indemnify, defend and hold BUYER harmless from any costs, expenses (including reasonable attorneys' fees), losses, damages, or liabilities incurred because of actual or alleged infringement of any patent, copyright, trade secret, trademark, or other intellectual property right arising out of the use by BUYER or BUYER'S end users of the Goods, except where BUYER furnishes and requires the Phi Parties to use detailed specifications for the procurement and/or purchase of the Goods, and such infringement claim would not have occurred but for complying with such detailed specifications, unless SELLER knows that same would cause an infringement.

(b)    SELLER shall, to the fullest extent permitted by law, defend, indemnify, and hold BUYER harmless from and against any and all claims, liabilities, demands, penalties, forfeitures, suits, judgments, including associated costs and expenses (including attorney's fees), which BUYER may incur, become responsible for, or pay out as a result of: death or personal injury (including bodily injury) to any person, destruction or damage to any property, to the extent caused by (i) any negligent or willful acts, errors, or omissions by SELLER, its employees, officers, agents, representatives, or subcontractors in the performance of this Agreement; (ii) the Goods, including the Standard Sample and the Mock-Up, failing to conform to the requirements of this Agreement or the Purchase Order; or (iii) defects in the Goods, the Standard Sample or the Mock-Up.

11.   Miscellaneous.  This Agreement contains the entire agreement between the parties and supersedes and replaces all such prior agreements with respect to matters expressly set forth herein, written or oral.  No modification shall be made to this Agreement and contract except in writing and signed by both parties.  This Agreement shall be binding upon all of the parties and their respective heirs, executors, administrators, successors, assigns, and other representatives.

12.   Notice: All notices required under this Agreement shall be in writing and shall be deemed to be properly served only upon receipt by:

Buyer,

7

c/o Federal Realty Investment Trust
1626 East Jefferson Street
Rockville, Maryland 20852-4041,
Attn.: Legal Department

Seller,
PHI Trading Company, Inc USA
100 Queens Road, Suite 250
Charlotte, NC 28204
Attn: Chandler D. England

This Agreement and contract is accepted and agreed upon by:

Phi Trading Company, Inc. USA

By: Chandler D. England
Its: President

Federal Realty Investment Trust, a
Maryland real estate investment trust

By: Dawn M. Becker
Its: Vice President -- Managing Director
Mixed Use Operations

Phi Holding Company, LLC

By: Chandler D. England
Its: Managing Member

Phi Enterprises, Ltd.

By: Chandler D. England
Its: President

9